```
                                                    Priority
                                                    Send
                                                    Enter
                                                    Closed
                                                    JS-5/JS-6 ____
                                                    JS-2/JS-3 ____
                                                    Scan Only____
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| RICHARD ESPINOZA, | No. CV 07-1210-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## I.

## PROCEEDINGS

Plaintiff filed this action on February 28, 2007, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income. The parties filed Consents to proceed before the undersigned Magistrate Judge on March 19, 2007, and April 4, 2007. Pursuant to the Court's Order, the parties filed a Joint Stipulation on November 7, 2007, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on March 21, 1957. [Administrative Record ("AR") at 54, 90.] He completed one year of college [AR at 88, 725-26], and has past relevant work experience as a truck driver, security guard, and a grocery store manager. [AR at 74-81, 83, 726-27.]

On January 5, 2004, plaintiff filed his applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that he has been unable to work since June 6, 2003, due to low back pain, left knee injury, and high blood pressure. [AR at 54-56, 82-83, 90-92, 549-52.] After his applications were denied, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 34-35, 37-41, 42-43.] A hearing was held on February 14, 2005, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 722-46.] A vocational expert also testified. [AR at 741-43.] On June 20, 2005, the ALJ determined that plaintiff was not disabled. [AR at 26-33.] When the Appeals Council denied plaintiff's request for review on January 25, 2007, the ALJ's decision became the final decision of the Commissioner. [AR at 5-8.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform

past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.  THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability.[1] [AR at 28, 32.] At step two, the ALJ concluded that plaintiff has the following "severe" impairments: obesity, degenerative joint disease, hypertension, sleep apnea, and substance abuse. [AR at 29, 32.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the following residual functional capacity ("RFC")[2] in the absence of substance abuse: "able to push, pull, and/or lift, including upward pulling, 20 pounds occasionally and 10 pounds frequently; able to stand and/or walk at least two hours in an eight-hour workday; able to sit six hours in an eight-hour workday; limited to occasional climbing of ramps, ladders, scaffolds, ropes, and/or stairs; limited to occasional balancing, stooping, kneeling, crouching, and/or crawling; and unable to work around machinery or heights."[3] [AR at 30, 32.] At step four, the ALJ concluded that plaintiff was not capable of performing his past relevant work. [AR at 30, 32.] At step five, the ALJ found, based on the vocational expert's

---

[1] The ALJ also determined that "[t]he claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision." [AR at 27, 31.]

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3] Based on plaintiff's RFC, the ALJ found that plaintiff "has been capable of performing a significant range of sedentary work as defined in 20 C.F.R. §§ 404.1567 and 416.967." [AR at 31.]

testimony and application of Medical-Vocational Rule 201.21 as a framework, that there are a significant number of jobs in the national economy that plaintiff is capable of performing. [AR at 31-32.] Accordingly, the ALJ determined that plaintiff is not disabled. [Id.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to: (1) properly consider the presence of morbid obesity in assessing his ability to perform the non-physical requirements of "other work"; and (2) properly assess the residual functional capacity of the physical requirements of work activity. Joint Stipulation ("Joint Stip.") at 4. As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**MENTAL IMPAIRMENT**

Plaintiff argues that the ALJ failed to consider the impact of his morbid obesity on his ability to perform the non-physical requirements of "other work." Joint Stip. at 4. Specifically, plaintiff asserts that the ALJ did not consider references to daytime sleepiness or the existence of a severe mental impairment in connection with plaintiff's obesity.[4] Joint Stip. at 8-10. Defendant argues that "[t]he ALJ clearly considered Plaintiff's obesity and its effect on his functioning in determining his residual functional capacity." Joint Stip. at 12. Defendant further argues that the ALJ properly concluded that plaintiff did not have a severe mental impairment. Joint Stip. at 15-16.

A "severe" impairment, or combination of impairments, is defined as one that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520, 416.920. "The Supreme Court has recognized that including a severity inquiry at the second stage of the

---

[4] In the Joint Stipulation, plaintiff alleges that the ALJ failed to properly consider the existence of a severe mental impairment, i.e., depression. Joint Stip. at 10-12, 18. Given that remand is appropriate based on the ALJ's failure in that regard, the Court need not address plaintiff's further argument in the Joint Stipulation that "[d]espite the references to somnolence, the ALJ did not address the questions of residual functional capacity for the non-physical demands of work activity secondary to obesity." Joint Stip. at 10.

evaluation process permits the [Commissioner] to identify efficiently those claimants whose impairments are so slight that they are unlikely to be found disabled even if the individual's age, education, and experience are considered." Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994) (citing Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987)). However, an overly stringent application of the severity requirement would violate the statute by denying benefits to claimants who meet the statutory definition of "disabled." Corrao, 20 F.3d at 949 (citing Bowen v. Yuckert, 482 U.S. at 156-58). Despite use of the term "severe," most circuits, including the Ninth Circuit, have held that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S. at 153-54); see also Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997) ("A claimant's showing at level two that he or she has a severe impairment has been described as 'de minimis'"); Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989) (evaluation can stop at step two only when there is no more than minimal effect on ability to work). An impairment or combination of impairments should be found to be "non-severe" only when the evidence establishes merely a slight abnormality that has no more than a minimal effect on an individual's physical or mental ability to do basic work activities. See Corrao, 20 F.3d at 949 (citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (citing Social Security Ruling ("SSR")[5] 85-28)); see also Smolen, 80 F.3d at 1290 (citations omitted); 20 C.F.R. §§ 404.1521(a), 416.921(a).

In the decision, the ALJ found that plaintiff did not have the severe mental impairment of depression. [AR at 29.] The ALJ asserted that "the record does not document a pattern of consistent complaints of depression, nor does the record reflect regular mental health treatment or any psychiatric hospitalizations." [Id.] The ALJ further asserted that plaintiff's "activities of daily living seem to have been limited by physical factors rather than any mental impairment." [AR at 29.] The ALJ also asserted that "the record does not show that [plaintiff] has successfully

---

[5] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

completed a substance abuse rehabilitation program."[6] [Id.] The ALJ's assertions are without merit.

The ALJ appears to rely on the March 8, 2004, evaluation of psychiatric consultative examiner, Dr. Cyril Barnert [AR at 154-59], and the "Psychiatric Review Technique" form completed by non-examining State Agency psychiatrist Dr. Kenneth D. Michael on April 7, 2004 [AR at 172-85], in concluding that there is no indication in the record that plaintiff consistently complained of depression or that plaintiff regularly sought mental health treatment. [AR at 29.] Dr. Barnert opined that plaintiff appeared "euthymic with no objective depression or anxiety" [AR at 156], noted that plaintiff's polysubstance dependence was in sustained remission for three years [AR at 158], and assessed plaintiff with a Global Assessment of Functioning ("GAF") score of 70.[7] Dr. Michael found that plaintiff did not suffer from a severe mental impairment. [AR at 172, 184.] However, the ALJ's conclusions regarding the lack of mental health treatment are inaccurate, and his reliance on the opinions of Dr. Barnert and Dr. Michael is misplaced.

The records indicate that plaintiff sought mental health treatment through the Veterans Affairs Greater Los Angeles Healthcare System, at various facilities, including the Veterans Affairs Los Angeles Ambulatory Care Center ("VA-LAACC") and the East Los Angeles Veterans Affairs

---

[6] To the extent that the ALJ is stating that plaintiff's depression is the "product and consequence" of his substance abuse, the ALJ's statement is defective. See Bustamante v. Massanari, 262 F.3d 949, 953-55 (9th Cir. 2001) (quoting 20 C.F.R. §§ 404.1535, 416.935) (ALJ erred in making a determination that plaintiff's mental impairments were the "product and consequence" of his alcohol abuse prior to finding that the plaintiff was disabled); see also Lindsay v. Barnhart, 370 F.Supp.2d 1036, 1044 (C.D. Cal. 2005) ("it is reversible error for an ALJ to attempt to separate out the impact of a claimant's alcohol abuse before determining whether the claimant is disabled"; finding that the ALJ segregated out the claimant's alcoholism from his remaining symptoms at step three, and failed to consider whether the claimant was disabled without removing his alcoholism from the equation).

[7] A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 32 (4th Ed. 2000). A GAF score from 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV, at 34.

Community-Based Outpatient Clinic ("East LA CBOC"), from April 2004 through February 2005.[8] [AR at 325, 351-52, 385, 394, 399-400, 417, 428, 495.] A "Psych Biopsychosocial Assessment Part I" was completed on April 21, 2004, in which plaintiff's height was noted as 73 inches and his weight as 446.8 pounds as of July 29, 2003. [AR at 394.] Plaintiff was diagnosed with depression, not otherwise specified ("NOS"),[9] obesity, sleep apnea, back pain and knee pain, and was assigned a GAF score of 51.[10] [AR at 399.] Plaintiff was also noted as having "[d]ifficulty coping with pain and obesity." [AR at 400.] On August 27, 2004, Edgar San Luis, a nurse practitioner at the East LA CBOC, assessed plaintiff with morbid obesity, hypertension, chronic low back pain, and bilateral knee pain.[11] [AR at 433.] A "Psych Biopsychosocial Assessment Part II," and a "Psych Behavioral Health Reassessment" were completed on October 8, 2004. [AR at 385, 391-94.] Plaintiff was diagnosed with, among other things, depression and obesity, and was given a GAF score of 60.[12] [AR at 385.] On October 26, 2004, Dr. Paul C. Lo, a staff psychologist at a VA outpatient clinic, noted that plaintiff was "currently suffering from a severe level of depression." [AR at 417.] On November 1, 2004, Dr. Bing Hsu, a staff psychiatrist at a VA outpatient mental health clinic, diagnosed plaintiff with depressive disorder, NOS, and prescribed plaintiff

---

[8] Plaintiff was also treated for depression prior to the alleged onset date of the disability. [AR at 217-18, 247-49.]

[9] "The Depressive Disorder Not Otherwise Specified category includes disorders with depressive features that do not meet the criteria for Major Depressive Disorder . . . ." See DSM-IV, at 381.

[10] A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM-IV, at 34.

[11] On December 28, 2004, Nurse Practitioner San Luis' assessment was essentially the same as his assessment on August 27, 2004. [AR at 403.] However, plaintiff was also noted as being "currently under treatment for depression or major depressive disorder." [AR at 404.] Nurse Practitioner San Luis noted that plaintiff admitted to "often feeling down, depressed or hopeless." [Id.]

[12] See supra, fn. 10.

Remeron[13] to treat his depression. [AR at 325, 351-52.] Dr. Hsu noted that plaintiff "described a long history of depression," and that plaintiff's symptoms included mood lability, insomnia, lack of concentration, memory difficulties, subjective depression and crying spells. [AR at 352.] Kathleen Koepplin, a registered nurse at a VA outpatient clinic, assessed plaintiff with depressive disorder on January 7, 2005. [AR at 428.] Also on January 7, 2005, Dr. Edward Moore, a psychiatry resident at the VA-LAACC, diagnosed plaintiff with depression, NOS, assessed plaintiff with a GAF score of 35,[14] and prescribed Wellbutrin.[15] [AR at 495.] On February 24, 2005, Nurse Practitioner San Luis indicated in a Residual Functional Capacity Assessment Form ("RFCAF") that he treated plaintiff for chronic low back pain, extremity pain, sleep apnea, morbid obesity, hypertension ("HTN"), and depression, and that plaintiff is seen every three months for fifteen minutes. [AR at 538.] Nurse Practitioner San Luis noted a diagnosis of chronic low back pain, depression, HTN, and obesity.[16] [Id.] In a letter dated February 25, 2005, Dr. Moore noted that plaintiff "is being followed for depression and is currently taking medications for this problem. He continues to struggle with his sleep problems

---

[13] Remeron (brand name), also known as Mirtazapine (generic name), is used in the treatment of depression to restore the balance of natural chemicals in the brain. http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name;" then enter the name of the drug; then select the appropriate hyperlink if there are multiple forms of the drug; then follow "Uses" tab).

[14] A GAF score of 31-40 denotes "some impairment in reality testing or communication . . . or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. . ." DSM-IV, at 34.

[15] Wellbutrin is used in the treatment of depression. http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name;" then enter the name of the drug; then select the appropriate hyperlink if there are multiple forms of the drug; then follow "Uses" tab).

[16] Also on February 24, 2005, Nurse Practitioner San Luis completed a Physical Capacities Evaluation, in which he found plaintiff able to sit, stand, and/or walk for no more than one hour in an eight-hour workday; able to lift and carry up to 20 pounds frequently, and up to 25 pounds occasionally; able to use hands and feet for repetitive movements; unable to bend, squat, crawl, climb, and reach; and restricted from activities involving unprotected heights, being around machinery, exposure to marked changes in temperature and humidity, driving automotive equipment, and exposure to dust, fumes and gases. [AR at 537.]

and depressed mood." [AR at 536.] Thus, the ALJ's conclusion that there is no documented pattern of mental health treatment is belied by the record.

Not only did the ALJ fail to mention all of the relevant psychological evidence in the decision, he also did not offer any sufficient reasons for the rejection of such evidence, specifically the multiple diagnoses of depression, NOS,[17] and the low GAF assessments.[18]  See Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore competent evidence in the record in order to justify her conclusion); see also Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted).  As such, the ALJ erred by failing to address "competent evidence" in the record.

The ALJ's statement that Nurse Practitioner San Luis' February 2005 opinion in the Physical Capacities Evaluation "lacks foundation and appears to be simply designed to create a disability ruling" [AR at 30], is also unsupported, as the ALJ points to no evidence of any actual impropriety on the part of Nurse Practitioner San Luis. See Lester, 81 F.3d at 832 ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits.") (quoting Ratto v. Secretary, Dept. of Health and Human Services, 839 F.Supp. 1415, 1426 (D. Or. 1993)); see also Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (the source of report is

---

[17] Although the ALJ noted that plaintiff was diagnosed with depression, NOS, in January 2005, he disregards that diagnosis because "[t]he record documents fleeting treatment for mental impairments." [AR at 28.] As noted above, plaintiff was treated for depression on numerous occasions at various facilities that are part of the Veterans Affairs Greater Los Angeles Healthcare System. See discussion, supra.

[18] While a GAF score may not have a "direct correlation" to the Social Security severity requirements (see Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. § 50746-01 (Aug. 21, 2000)), the ALJ does not proffer any authority indicating that the GAF assessments of 35, 51, and 60 assigned to plaintiff during his mental health treatment, and their implications, may be ignored without sufficient reason. The ALJ cannot point to only those portions of the treatment record that bolster his findings. See Olds v. Astrue, 2008 WL 339757, at *4 (D. Kan. Feb. 5, 2008) (a low GAF score does not alone determine disability, but it is a piece of evidence to be considered with the rest of the record) (citation omitted); see also Escardille v. Barnhart, 2003 WL 21499999, at *5-6 (E.D. Pa. June 24, 2003) (ALJ's failure to address a GAF score of 50 "or its meaning regarding plaintiff's ability to maintain employment" was error).

a factor that justifies rejection only if there is evidence of actual impropriety or no medical basis for opinion) (citing Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996), cert. denied, 519 U.S. 1113 (1997)). The record contains no evidence that Nurse Practitioner San Luis embellished his assessment of plaintiff's limitations in order to assist him with his benefits claim. See Reddick v. Chater, 157 F.3d 715, 725-26 (9th Cir. 1998) (holding that the ALJ erred in assuming that the treating physician's opinion was less credible because his job was to be supportive of the patient). Furthermore, the ALJ's determination that Nurse Practitioner San Luis' opinion was not entitled to "significant weight" because he "is not a physician" is insufficient under the specific circumstances of this case. [AR at 30.] Although the reports of "other sources"[19] are afforded no inherent deference under the regulations, the regulations allow an ALJ to consider the reports of other medical sources in light of the particular history of treatment. See 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ may use evidence from other sources to show the severity of a claimant's impairment and how it affects a claimant's ability to work. See 20 C.F.R. §§ 404.1513(d), 416.913(d). Given that Nurse Practitioner San Luis' opinion in February 2005 in the RFCAF, specifically concerning plaintiff's depression, was consistent with the opinions of "acceptable medical sources"[20] in the record, i.e., the opinions of the psychiatrist and psychologist who treated plaintiff as an outpatient, the ALJ erred in discrediting Nurse Practitioner San Luis' opinion.[21]

---

[19] "Other sources" include nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists. See 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).

[20] "Acceptable medical sources" include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. See 20 C.F.R. §§ 404.1513(a)(1)-(5), 416.913(a)(1)-(5).

[21] Although the ALJ summarized a portion of the February 2005 opinion of Nurse Practitioner San Luis, the ALJ failed to note that Nurse Practitioner San Luis assessed plaintiff with depression [AR at 30, 538], and the fact that his treatment records and opinions were consistent with the opinions of physicians who treated plaintiff as an outpatient. See discussion, supra. The ALJ's rejection of Nurse Practitioner San Luis' opinion was based on only one of the forms filled out by Nurse Practitioner San Luis, i.e., the Physical Capacities Evaluation [AR at 537], to the exclusion of the other form completed by Nurse Practitioner San Luis, i.e., the RFCAF [AR at 538], and other pertinent treatment records. This is improper. See Drouin, 966 F.2d at 1257 (the administrative record must be examined as a whole, considering adverse as well as supporting evidence); see also Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The

1 | Indeed, the ALJ failed to provide legally sufficient reasons,[22] or, for that matter, offer any reasons whatsoever for the lack of weight given by him to the opinions of the staff psychiatrist and staff psychologist that plaintiff suffered from depression.

The ALJ's conclusion that plaintiff did not suffer from a severe mental impairment, i.e., depression, is not supported by substantial evidence. At the very least, the treatment records, as well as the GAF assessments assigned to plaintiff after the alleged onset date of the disability, suggest that plaintiff meets the de minimus test at step two of the sequential analysis. Accordingly, remand is warranted on this issue.[23]

/
/
/
/
/
/
/

---

ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability") (citing Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984)). Even assuming that the ALJ did not err by discrediting Nurse Practitioner San Luis' report, the ALJ failed to properly evaluate the opinions of plaintiff's physicians. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (every medical opinion received by the Social Security Administration will be evaluated regardless of its source, unless the treating source's opinion is given controlling weight).

[22] Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Smolen, 80 F.3d at 1285; Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). The ALJ must provide specific, legitimate reasons for the rejection of a treating physician's opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (requiring that Social Security Administration "always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion").

[23] As the ALJ's consideration on remand of plaintiff's mental impairment may impact the other issues raised by plaintiff in the Joint Stipulation, the Court will exercise its discretion not to address those issues in this Order. Rather, plaintiff's residual functional capacity should be re-examined in light of the remand Order.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly consider the severity of plaintiff's mental impairment at step two of the sequential analysis. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: May 7, 2008

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE